UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TONYA B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:24-cv-02257-MJD-JRS |
| | ) |
| FRANK J. BISIGNANO, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Tonya B. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB in December 2021, alleging an onset of disability as of December 7, 2021. [Dkt. 10-2 at 18.] Her application was denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Kevin Fallis ("ALJ") on June 29, 2023. *Id.* On October 3, 2023, the ALJ determined that Claimant was not disabled. *Id.* at 18-31. The Appeals Council denied Claimant's request for review on October 29, 2024.

---

[1] To protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

*Id.* at 2-4. Claimant then timely filed her Complaint on December 23, 2024, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standard

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

conclusive finding that the claimant either is or is not disabled, then he need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M. [v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000)* (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In addition, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it. See *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). This is the standard the Court will apply in this case.

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of December 7, 2021. [Dkt. 10-2 at 20.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease lumbar spine, sciatica, scoliosis, diabetes mellitus, polyneuropathy, carpal tunnel syndrome, hypothyroidism status-post thyroidectomy, GERD, headaches, restless leg syndrome, obesity, fibromyalgia, depression, and anxiety." *Id.* At step three, the ALJ found that Claimant's impairments did not

3

meet or equal a listed impairment during the relevant time period. *Id.* at 21.  The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can frequently balance. She can frequently handle and finger with the bilateral upper extremities. She must avoid concentrated exposure to vibration. She must avoid work involving very loud noises (level 5), such as a fire alarm. She must avoid concentrated use of hazardous, moving machinery. She must avoid all exposure to unprotected heights. She is limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements, such as assembly line work, involving only simple work-related decisions and routine workplace changes. Limitations are as defined in the Selected Characteristics of Occupations of the DOT, where definition is present.

*Id.* at 25-26.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 29.  At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as Cashier II (DOT 211.462-010), Housekeeping Cleaner (DOT 323.687-014), and Cafeteria Attendant (DOT 311.677-010). *Id.* at 31.  Accordingly, the ALJ found that Claimant was not disabled. *Id.* at 30.

### IV. Discussion

Claimant raises one issue in her Brief in Support of Judicial Review: whether the ALJ erred in conducting the subjective symptom analysis.  [Dkt. 12 at 4.]

An ALJ's subjective symptom evaluation is a credibility determination entitled to special deference and will be reversed only if patently wrong. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  When assessing a claimant's subjective symptoms, an ALJ will complete a two-step process.  First, the ALJ will "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an

4

individual's symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including but not limited to the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8.

In this case, the ALJ determined that Claimant's medical conditions could reasonably be expected to cause her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record. [Dkt. 10-2 at 27.]

Claimant argues that the ALJ's subjective symptom analysis was patently wrong for several reasons. First, the ALJ characterized Claimant's treatment as "mostly conservative" even though she was prescribed numerous pain medications, received steroid injections, and underwent carpal tunnel surgery. [Dkt. 12 at 13-14.] Second, he failed to account for the side effects of her medications, including nausea. *Id.* at 15. Third, he failed to account for modifications and assistance Claimant requires to perform daily activities, such as help from her husband and the need to take breaks when running the sweeper. *Id.* at 18-19. Fourth, he characterized her medical records as showing "mostly normal to mild physical and mental status examination findings," even though her medical records show numerous findings of weakness, diminished range of motion, pain, and other symptoms. *Id.* at 16-17. Fifth, he "disregard[ed]

5

[Claimant's] statements of good days and bad days and fluctuating pain and abilities" with respect to fibromyalgia, in violation of SSR 12-2p. *Id.* at 19-21. Finally, two of Claimant's impairments include migraines and fibromyalgia, which are not amenable to objective diagnostic testing. *Id.* at 17-18.

Having reviewed the Parties' briefs and other relevant portions of the record, the Court finds that the ALJ's subjective symptom analysis was not patently wrong. Conservative treatment is one factor among many that the ALJ can consider in conducting the subjective symptom analysis. *See* 20 C.F.R. § 404.1529(c)(3)(iv); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005). Many of the treatments Claimant received were conservative, such as anti-inflammatories, physical therapy, and steroid injections. *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2023) (noting that steroid injections "have been described as conservative treatment"). One of Claimant's providers, Community Spine Center, described her combination of treatments as "extensive conservative treatment" and noted that they did not have additional treatment options to manage her chronic low back pain. [Dkt. 10-8 at 122-23.] The Court agrees with Claimant that she received other, less conservative treatments, such as narcotics and carpal tunnel surgery. However, the ALJ did not state that Claimant received *only* conservative treatment; he stated that she received *mostly* conservative treatment, which was one of multiple factors he considered in conducting her subjective symptom analysis. Given these circumstances, and the substantial deference owed to the ALJ's credibility determinations, the Court finds that the ALJ's characterization of Claimant's medical care as "mostly conservative" was not patently wrong and does not support reversal.

Contrary to Claimant's arguments in her brief, the ALJ repeatedly mentioned her chronic nausea, which Claimant states is a side effect of medication. *See*, *e.g.*, [Dkt. 10-2 at 27 ("She

6

said that she has constant nausea that results in vomiting"); 28 (noting that Claimant's medical records state that she "chronically 'feels sick to her stomach'").] He expressly acknowledged the conditions of Claimant's daily living activities, such as the assistance she receives from her husband. *See id.* at 26 (Claimant receives help with bathing and dressing); 27 (husband helps with chores and caring for the family pets, and it takes her longer to cook meals due to her medical conditions). He recognized many of the physical exam findings in Claimant's medical records, including antalgic gait, limited range of motion, pain, numbness and tingling. *Id.* at 27. He noted that she has good days and bad days and does not think she will be a reliable employee due to absenteeism. *Id.* at 26, 28. The ALJ may not have included each and every detail from Claimant's medical records, function reports, and other documents, but he was not required to do so. *See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). Claimant has not shown that the ALJ erred by cherry picking evidence, ignoring whole lines of evidence, or impermissibly playing doctor in weighing the evidence. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Instead, the ALJ relied upon expert medical opinions from state agency physicians, who opined that Claimant was capable of light work, and he added additional limitations beyond the agency physicians' recommendations based on his own review of the evidence. [Dkt. 10-2 at 29.] The ALJ also considered Claimant's *mostly* conservative treatment, her range of daily activities, and the prevalence of mild symptoms and exam findings throughout her medical records, while also noting areas of weakness, pain, or other limitations—areas that Claimant incorrectly claims he ignored. *Id.* at 26-29.

The Court does not interpret the ALJ's opinion as discrediting Claimant's headaches or fibromyalgia based on a lack of objective testing, as she argues in her brief. He did not, for example, point to a lack of imaging studies in assessing her headaches, which courts have held

7

would be error.  *E.g.*, *Moon v. Colvin*, 763 F.3d 718 (7th Cir. 2014).  Claimant's progress notes from a neurology appointment in October 2022 state that she has "[n]onintractable episodic headache, unspecified headache type . . . history raises suspicion of tension type headache . . . she is not interested in meds at this time . . . [c]all or return if symptoms worsen or persist."[3]  [Dkt. 10-7 at 339.]  Claimant's briefs do not cite any medical records suggesting her headaches became more severe or required additional medical attention after that appointment.  Given these circumstances, the Court defers to the ALJ's determination that this conservative headache treatment, *i.e.* nothing, along with the neurologist's determination that Claimant has non-intractable headaches, possibly tension headaches, are inconsistent with Claimant's reports of debilitating migraines.  As to fibromyalgia, the ALJ did not question the existence of claimant's fibromyalgia, nor did he question the extent of her symptoms based on a lack of objective medical tests.  He merely determined that the treatment she received, her description of these symptoms in her medical records, other relevant information such as her daily activities, and the state agency physicians' expert opinions did not support a finding of disability.  The Court does not discern a basis for reversal from that analysis.

      To be sure, the record supports the ALJ's finding that Claimant has multiple medical conditions, and Claimant has presented "colorable arguments" for the Court's consideration.  *Gedatus*, 994 F.3d at 901.  But Claimant has not shown that the ALJ's subjective symptom analysis was patently wrong and requires reversal.  The standard for disability claims under the Social Security Act is high.  *Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018).  "The Act

---

[3] A tension headache is a "headache, usually mild or moderate in intensity, not accompanied by other symptoms; pain is usually felt throughout the head, across the forehead, or in the back of the head.  Also known as a muscle-contraction headache." *Tension Headache*, Harvard Medical School Medical Dictionary of Health Terms (Feb. 2026).

does not contemplate degrees of disability or allow for an award based on partial disability." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010) (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Given the high bar for disability benefits and the substantial deference owed to the ALJ, the ALJ's decision denying Claimant disability benefits is **AFFIRMED**.[4]

### IV. Conclusion

For the reasons set forth above, the ALJ's decision is **AFFIRMED**. Final judgment shall issue accordingly.

SO ORDERED.

Dated: 26 FEB 2026

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[4] In Claimant's reply brief, she argues for the first time that the ALJ erred by failing to consider her reasons for not pursuing additional mental health treatment for anxiety and depression and that he should have retained an additional expert to review medical records that post date the state agency physicians' opinions. [Dkt. 15 at 1-3.] Because these issues were not raised in Claimant's opening brief, the issues are waived. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (explaining that arguments raised for the first time in a reply brief are waived). Indeed, Claimant barely mentions anxiety and depression in the opening brief. At one point in the discussion section, she appears to argue that the ALJ misstated the record in determining that she showed "mostly normal to mild . . . mental status examination findings," but she does not point to any medical record contradicting that assessment. [Dkt. 12 at 16.] Later on in the brief, she summarily states, "As noted above, the ALJ's determination regarding [Claimant's] mental health symptoms is indeed patently wrong." *Id.* at 21. Claimant's perfunctory argument as to the ALJ's assessment of her anxiety and depression as set forth in her opening brief is inadequately developed and therefore waived. *See United States v. McGhee*, 98 F.4th 816, 824 (7th Cir. 2024).

Distribution:

All ECF-registered counsel of record via email